3-11-08-08 People in the State of Illinois amplified by Robert Hanson v. Jackie L. Williamson, a panelist by Gabrielle Green I represent the appellant in this case, Jackie Williams. Mr. Williams was convicted of first degree murder and sentenced to life in imprisonment. There were two issues that were raised on appeal. I'll be discussing the only issue that is contested by the parties, that being the first stage dismissal of the appellant's post-conviction petition. At the trial stage, defense counsel filed a motion to suppress in which he alleged, in pertinent part, that an Edwards violation occurred where the police officers re-initiated post-trial motions. The appellant's post-conviction petition alleged ineffective assistance of appellate counsel on direct appeal for not raising that issue. And he is asking that you reverse the circuit court's order dismissing his post-conviction petition at first stage. The court is aware of the Hodge's standard for the dismissal of post-conviction petitions at the first stage and that they're only to be dismissed when they are frivolous or faintly without merit and that they fail to state the gist of a constitutional claim. And that gist standard is a very low standard. It's only for when a claim has no merit in fact or in law. The state would suggest, and the state argues, that the appellant's claims are contradicted by the record. Or the record indicates that the Edwards violation was mentioned in the motion to suppress in the post-trial motions and appellate counsel did not raise those issues. The state also wants to heighten the standard at first stage in suggesting that the appellant establish the claims that he alleges in his post-conviction petition at the first stage. And at the first stage an appellant need only make arguable claims. And here there is an arguable Edwards violation. According to Edwards v. Arizona, where the police reinitiates interrogation after a detainee has invoked his or her right to counsel, any subsequent statements must be suppressed. What's key is that the interrogation defines interrogation as direct questioning as well as any words or actions that are reasonably likely to elicit incriminating response. And that's what's key here. Here, after the appellant, Jackie Williams, after he invoked his right, well he was questioned for a while regarding evidence that the investigation had brought. He invoked his right to counsel. At that moment, a few things happened and I think cumulatively they all lead to an Edwards violation. First, Detective Walden shakes phantom air dice in his hand and throws them onto the interrogation table indicating that the appellant is taking a gamble by invoking his right to counsel, by not participating in the way that he would want. Then both the detectives leave. When Detective Walden comes back, he starts asking booking questions. And while asking booking questions may seem routine, the asking of booking questions is often done at the jail. So coming in back into the interrogation room and asking booking questions at that point, definitively letting the appellant know that he was going to be arrested was also tactical, was also a method of interrogation. Especially when Detective Walden is asking the appellant for his address and as the appellant is giving his address, Detective McDaniel walks in and slams the murder weapon, the gun, on the table causing the appellant to stop giving his address, whistling at the gun and asking, where did you get that? Now the response from Detective Walden is that, you know, we can't talk to you about that. You invoked your right to counsel. And not a minute later, the appellant states that he wants to talk and ultimately does give a confession. And there is no other reason for Detective McDaniels to have brought the gun into the interrogation room other than to get the appellant to speak. The interrogation was over. There's really no reason for McDaniels to reenter the room. And I do challenge the state, I think the state has yet to come up with a reason as to why, any other reason as to why the gun would be brought into an interrogation room when the interrogation is finished. And I submit that they will not be able to do so because there cannot be any other reason other than to get the appellant to speak, to give a confession, which is what happens in this case. Now because the appellant alleges ineffective assistance of counsel, there needs to be an arguable claim that the appellant counsel's performance was objectively unreasonable. And it was arguably objectively unreasonable where the issue was preserved and where there is a likelihood of success for the Edwards violation with respect to the gun. Also with the claim of ineffective assistance of counsel, there needs to be arguable prejudice. And there was arguable prejudice. There was a question as to who personally discharged the firearm. And just going back to count one of the indictment, that contemplates that the defendant and his co-defendants committed essentially felony murder where the defendant and co-defendants shot David McCreary with a handgun, thereby causing his death. So even the indictment contemplates that there was a question as to who personally fired the firearm. And the question here with respect to prejudice is did the error contribute to the conviction? And the appellant, I suggest that it does, that it did. When we look at the evidence, there was, so essentially did admitting the confession contribute to the conviction for felony murder? Here, because it was charged with felony murder, the state had to prove that a robbery had occurred. Without the confession, it's arguable that the appellant would not have been found guilty of felony murder, that they could not prove the robbery itself. There was really only one witness who gave any testimony with respect to a possible robbery that occurred. And that witness's testimony was shaky. He did admit that he didn't remember everything. He didn't remember how many times he'd gone and spoken to the police. And the statement, break yourself, which according to him meant about to do a robbery, was the same statement that Detective McDaniels, a detective with the Peoria Police Department for several years, claimed he never heard before and claimed that he was told, and he said this twice, that the same witness didn't say break yourself, that he said brace yourself. There was only one witness whose testimony was corroborated by the physical evidence, and her testimony was quite different from the witness who testified with respect to the supposed break yourself comment. And that witness indicated that the shooting occurred the moment that the individuals entered the house. And it's arguable that that does not suggest a robbery. It's arguable that that could suggest, as we heard in the testimony, these were rival gang members, it could have been retaliation of some sort and not a robbery at all. It could have been intent to kill, which would not have been enough to sustain a conviction for what was alleged in the indictment. So here there is an arguable prejudice as well. Lastly, I wanted to talk about a case that was referenced by the state in their reply brief, that being People v. Miller and as well as People v. Oliveira. And I think those two cases, along with Bradshaw, are a bit different. I think that those cases deal more with the nature of the inquiry by the defendant as to whether or not it was the defendant or the police who reinitiated the interrogation. In Miller and in Oliveira and Bradshaw, the question is whether or not the nature of the defendant's question was with respect to the interrogation and to the investigation itself, or if it was with respect to the custodial nature or the custodial relationship, be it asking for something to drink or asking for something to eat. And those are much different, even though they stand for the same propositions as it does in this case. They are very different from the case at bar. Also, those cases focus on the officer's response. In Miller, the officer's response was that of informing the defendant of his rights. In Oliveira, the officer's response was an answer to the question. The officer did not tell the defendant that he could not speak. And those are quite different from what's here. Here we have a question. There's really no question as to the nature of the inquiry made by the appellant in this case. He did say that he wanted to talk. There's no question as to whether or not it's about the investigation or whether it's about the custodial nature. There's also really no question about the officer's response, even though after the appellant asked where the gun came from and Officer Walden said, we can't talk to you about that. You asked for counsel. The appellant's question was initiated by the showing of the gun, by this gun that the officer on his own brought into the interrogation room for essentially no reason other than to get the appellant to confess. There are no questions. I just want to know, what's the difference between an officer hearing brace yourself and the witness that was there saying break yourself? I mean, is there something significant about the difference? I mean, they sound similar, obviously. They do. What's significant is that it's, first of all, the witness who said he heard break yourself, that's really the only term or the only thing that's outside of the confession, if the confession was not into evidence, that would be the only evidence for arguing for there being a robbery. If an officer with experience has never heard the term break yourself and says that the word brace yourself means nothing to him, then it would indicate that there was no robbery. So the definition of break yourself is important for the state's case, if I've answered that. If there are no other questions, thank you. I guess not. Thank you, Mr. Hanson. Good afternoon, Your Honor. May it please the court, counsel. My response will be fairly brief here regarding the, I'll discuss really the underlying issues, everything about ineffective assistance appellate counsel, the law in that regard has been stated in the brief, but I'd just like to make largely factual points here. Regarding the Edwards violation purported to exist, the police did not reinitiate, the record is clear, that is our point in a nutshell. The police did not refer to the gun when they placed it on the table or call the defendant's attention to it. That bit about an officer making a dice-throwing motion, air dice or something, that got nothing out of the defendant. The record is unequivocally clear. That had zero effect, so whatever, assuming the officer did that, it generated nothing. The defendant, when he's going to ask where the gun's from, the officer right away says, we can't talk to you as you'd ask for an attorney. The officer continued getting booking information, showing no interest in talking to him about the case other than getting, you know, the biographical name address sort of stuff. About a minute later, the defendant said he wanted to talk. The defendant was again mirandized. He then gave the statement, but in addition to mirandizing, and as the judge below noted, they even brought in a supervisor, a sergeant. And the judge found, and I think this is pretty helpful to the state, that the cops used no pretext to get the defendant to talk, but continuously told him, and the record reflects this, that he didn't have to talk unless he really wanted to, and the judge talked about they even brought in, I believe it was a sergeant. The judge said he's always looking to see. He specifically said he's always looking to see if the police are trying to trick a defendant into giving up his rights, and that simply didn't happen here. The person in the best position, the experienced trial judge, saw that. The incident case, your honors, I think it was stupid, because I think it was guaranteed to reestablish the defendant's recalcitrance to talk. I think the defendant's already said he doesn't want to talk, he wants a lawyer. They bring in this gun. I don't think that's reinitiation, trying to get him to change his mind. I think, in logic, what that does is make the defendant say, geez, my God, now I really don't want to talk. You know, they got the gun. I don't think there's any reason to believe the police thought that gun was a means of reinitiating or getting the defendant to overcome his earlier, earlier, you know, guilt. Reliance on Miranda. What the purpose was, is A, insolubly ambiguous, or B, just dumb, with no purpose favorable to the state. My point is, facing a defendant who's exercised his Miranda rights to bring in evidence that could be recognized by him as detrimental evidence has no reasonable result other than to solidify his previous reliance and citation of his rights under Miranda, if I've answered your question well enough. But that's not what happened. It didn't solidify. It didn't, no. But, you know, the police can only act reasonably, you know. That doesn't seem reasonable to me. Pardon me? That doesn't seem reasonable to me. You said it didn't seem reasonable to you. I said it didn't seem reasonable that it was directed to generate the defendant talking. You said that it was stupid to bring in the gun. Stupid to bring in the gun because I think, looking at it from law enforcement perspective, all that could reasonably be expected to do was solidify the defendant's reliance on Miranda. If they had any hope of getting him to, you know, change his mind on having said, I don't want to talk to you, I want a lawyer, if they had any hope. The one thing they shouldn't have done is what they did, bring in that gun. Now, granted, the defendant operated as he did and as we all recognize. I think that was aberrational. I don't think it's what the cops anticipated would happen. That's why they brought the gun in. I think it was just dumb. Okay. I think that's disingenuous. Sorry. I have a question. You talked about the air dice had no effect at all. Isn't that what counsel is arguing is that it is the cumulativity. He tries that and the guy doesn't do anything. Then they come in and start asking some booking questions. Which they're easily able to do. I'm sorry to interrupt. And that doesn't really budge him. Conversationally now, he's not starting to do anything. So then they bring in the big gun, so to speak. They bring in the gun and they put it down, which seems to me would be out of the chain of custody. Would not be protocol to bring a firearm into a, you know. And I guess what we're trying to look at is whether or not it's something that they do that they think would reasonably elicit a change. And you don't see that there's sort of a ramping up or you think all of these things are just independent of each other. I don't think it's a ramping up. Like I said, maybe I wasn't sufficiently eloquent in response to Judge Linton, Judge McDade's question. I think it was just dumb. You know, they have the gun. They found the gun. They have to put it somewhere. If you ask me, A, with the benefit of hindsight, or B, if I were a policeman myself, and I never have been so perhaps I don't know, they shouldn't have brought that gun in. Because my point is, and I hope I'm not being too redundant, that was dumb in that it was likely, in my opinion, to reasonably just solidify the defendant's recalcitrance about talking. Yeah, they should have put it somewhere else, you know, out in the evidence locker or in somewhere other than that room. But again, when they did put it there, and the defendant said, you know, where'd you get the gun from or something, and they said, we can't talk to you. He asked for a lawyer. He waited about it. Then he said he wants to talk to him. They keep saying, as the judge below found, they kept telling him, we can't talk to you. And then they bring in a supervisor to make sure. All of that together, and I agree you're going to look at all the facts, look at it in their context, I think it's quite clear that no Edwards versus Arizona violation occurred here. I think it's the defendant, and the record shows that, the defendant, not the police, who re-initiated the conversation. I would make the additional argument, and I'll be terse about this, then I'll get into harmless error, that unlike the defendant's case they rely on, they didn't discuss here in a oral argument, the Oliveira case, where the defendant there asked questions after earlier asking for counsel. The cop answered it before Mirandizing him, and Oliveira found that to be an error. Here, when the defendant asked the question again, where'd you get the gun, the cop said, we can't talk to you, and re-Mirandized him, then he gave his statement. The police complied with what Oliveira said was the requirement. I've already told your honors what the judge below said. Turning aside the question of an Edwards violation, we're here on an argument that this is ineffective assistance of appellate counsel, and we're now going to the prejudice aspect. If there was any error, and I strongly urge there was not, for the reasons stated, it was obviously harmless in this case, given the overwhelming evidence of guilt. The record makes unequivocally clear, your honors, that this defendant is simply, unequivocally, totally a murderer, entitled to no relief, a murderer who got a fair trial. I gave you the argument in my brief about the petition, being inadequate is not supported by an affidavit, I won't bore you with the details there, you know the case law, it's cited in my brief. As to the harmlessness of the error, that's the basis for this felony murder conviction, this being a murder based on an armed robbery, evidence of an armed robbery. There's no question here that this was a victim killed in the course of an armed robbery. If you look at the record, as I'm sure you will, it's cited in more detail in my brief. Heck, it's set out very nicely in the defendant's statement of facts. The defendant entered disguised, he's going there to make a drug transaction, called ahead, he goes in disguised and started shooting, admittedly going there to get cannabis, and I'm bringing together what all the witnesses said. He said, break yourself, which that witness inside the house named, I believe Ratliff said, means a hold up. The defendant had a gun, the defendant wore all black. They parked the car a block away from the robbery scene, you don't want to have the vehicle be seen right at the scene, it's much easier to run a block away and get in a vehicle rather than run out the front door and get in a vehicle and have neighbors say, you know, a blue Ford pulled away. The defendant told the woman that was involved in the crowd, I believe her name was Warfield, Katishu Warfield, to call the victim to say they were coming to get the weed. They admittedly didn't have enough money to pay for it. Unequivocally, this was a robbery, and of course the defendant shot, murdered the victim. This was no mere drug deal gone bad, which the defendant, as best he could do, you know, perjure himself by saying that, but it was perjury, and it was unconvincing, and the jury could recognize that. That's why we have juries, they can tell when they're being lied to. The defendant further, of course, as to his credibility at trial, was impeached with a felony conviction. One of his co-defendants had earlier spoken, if this is a robbery, let's go hit a lick in that case. And everybody agrees, lick means robbery. And I would say, maybe that break yourself was something like a lick or something, but be that as it may, no question, lick means robbery, that it was proposed to the defendant earlier by a co-defendant. He said he'd think about it. Think about it. In talking to the police and saying, after being re-Mirandized, that this was a killing that happened in the course of an attempted armed robbery, the defendant was just saying the obvious. The proof of this being a murder done in the course of an attempted armed robbery, or in the course of an armed robbery, even without the confession, was overwhelming. The defendant's testimony was his only chance. No rational trier of fact would ever believe that preposterous story. And, again, my major point is, my major points are two. There was no Edwards violation. If you disagree with me on that, it was blatantly harmless error in this particular case. Thank you. Thank you, Mr. Hanson. And Ms. Green, any rebuttal? Just with respect to the affidavit, there was a case that was cited, People v. McCoy, and that's currently pending in the Supreme Court with respect to the notarization of the affidavit, just to inform this court. Now, the state says that they had to put the gun somewhere, which the gun was somewhere. The gun was in the evidence locker, most likely. The gun had been put in plastic, which means it had been processed. It had been dusted for fingerprints. It had been swabbed for DNA. That's in the testimony. And it was put in the evidence locker. There was absolutely and clearly no reason for it to be brought into the interrogation room, especially not just for placement. With respect to prejudice, the state is arguing that there was prejudice, but the state is using the defendant's confession. Outside of the defendant's confession, there really was, though, there's arguably, which is the standard here for the first stage dismissal, arguably evidence that this was not a robbery. And as bad as it is, it could have been retaliation, where they intended to go in and harm the decedent in this case. That would not have been enough for the conviction, where the indictment only alleged that the murder occurred during the course of a robbery. It just simply wouldn't have been enough. And that would also mean that because they came in disguises, wore all black, it supports a robbery, it supports intent in some sort of retaliation. So I would argue that the state's argument is not convincing. And just lastly, with respect to the trial court's comments in believing that's where the officers go and they get the supervisor to reaffirm that the defendant wants to waive his rights, we'd submit that this is kind of what they do, just like what they did to try and convince him to talk again. It's not their job to convince him to talk again. Once he has invoked his right to counsel, it's their job to stop, and they didn't. And as a result, it's in the video, it's clearly in the video, and it should have been preserved and it should have been raised on direct appeal. And therefore, we're asking you to reverse the court's order. Thank you, Ms. Green, and thank you both for your argument today. We will take this matter under advisement and get back to you with a written decision.